CARMEN MORALES DE ROVIRA, ETC., ET AL., Plaintiffs and Appellees, *v.* DOLORES CABRERA DE SALAZAR, Defendant and Appellant.

No. 7107. Argued March 19, 1937.—Decided April 21, 1938.

*Carlos J. Torres* and *Joaquín Vendrell* for appellant. *Celestino Benítez Morales* for appellees.

Mr. Justice Wolf delivered the opinion of the court.

Darío Rovira Cordovés died intestate on April 15, 1929. As a result of a proceeding to ascertain the identity of his heirs-at-law, the following persons were so declared: María Marina, Alejandrina and Pedro Rovira Ríos as legitimate issue of the first marriage of the deceased; Providencia Rovira López, the only offspring of the second marriage; and the minors Carmen Pura and Darío Rovira Morales from the third marriage, together with their mother, Carmen Morales.

Sometime in October 1924, Darío Rovira Cordovés had borrowed $5,000 from Pedro Salazar Schuck and to secure its payment executed a four-year mortgage on certain property. Salazar died in 1927 and in part payment of her share of the estate, his widow, Dolores Cabrera, received the title to the mortgage credit recited above. On November 30, 1930, she filed an ordinary suit to foreclose the mortgage, wherein, as far as we have been able to discover from the transmitted record, only María Marina, Alejandrina and Pedro Rovira Ríos, Carmen Morales, widow of Rovira Cordovés, and her minor children Carmen Pura and Darío Rovira Morales were named as parties defendant. It was alleged therein that the above defendants had accepted the inheritance and were in possession of the premises.

Although no point seems to have been made of it, Providencia Rovira López, who was the deceased's only child by his second marriage, does not appear to have been made a party to the above proceeding. We shall, however, pass over this question without further comment.

The lower court, after overruling a demurrer interposed by the three elder children, entered a default judgment against the defendants aforementioned for $6,000, interest and costs. Execution was issued and had on the mortgaged premises and the property was sold and adjudicated to the creditor for $6,000.

To annul the above foreclosure proceeding, a suit was brought by the minors Carmen Pura and Darío Rovira Morales, represented by their mother. Three causes of action were originally set out, but at the trial only the first of them was prosecuted. The other two were abandoned. The subsisting cause of action which only sought the annulment, relied fundamentally on (a) the failure, as required by law, to notify the minors personally with a copy of the complaint or summons, and (b) the failure to notify those same minors of the actual judgment.

A cross complaint was filed by the appellant wherein she alleged that plaintiffs should, as a condition precedent to recovery of their share of the premises, be required to pay one-sixth of the principal sum and interest. Each, according to appellant's brief, had inherited an undivided 1/12 interest in the property. The lower court annulled the entire proceeding and ordered the cancellation, in the registry of property, of the adjudication to the mortgage creditor.

Abandoning all other defenses, the appellant has chosen to rely solely on the following errors.

She maintains that the court erred:

"*First.*—In not sustaining the demurrer to the complaint, or in other words, in not deciding that the plaintiffs are not entitled (*no compete a los demandantes*) to bring an action to annul the judgment and execution sale, and in not holding that their right is exclusively limited to that part of the judgment which affects them and their undivided interest in the property, for which they may have resort to an action for the division of the community.

"*Second.*—In annulling the whole judicial proceeding, without the application therefor by some of the original parties who were

legally served for the purposes of answering the complaint and who were notified of the judgment, and without giving them an opportunity to be heard.

"*Third.*—In granting costs against the defendant."

We shall assume, with the appellant, that the complainant minors were never legally served with a copy of the summons or complaint in the ordinary suit for the foreclosure of the mortgage (Civil No. 13,485 of the District Court of San Juan) and therefore that no personal jurisdiction over them ever vested in the lower court in that proceeding. We shall, however, ignore, for the purposes of this appeal, the persons who, for the first time and without any explanation, are included as parties plaintiff in the copy of the "bill of exceptions and amended statement of the case" which appears in the record. We have been unable to find any specific reference to them anywhere else in the record, except that their names appear in the caption of the case thereafter. With these precedents we shall proceed to dispose of the errors assigned.

The appellant in her brief states the facts and the issue before us in the following terms:

"The state of facts, gentlemen, is therefore the following: The plenary suit for the foreclosure of the mortgage credit was not prosecuted against all the joint owners of the property but only against some of them, among whom were minors and adults, and only the adults were served so that they could answer the complaint, and were notified of the judgment.

"The plaintiffs maintain that because the debtor community as to the mortgage, or, in other words, the estate of Darío Rovira Cordovés was not brought into the suit nor made party defendant, the judgment which was rendered for the payment of the mortgage credit and which ordered the sale of the premises is absolutely null and void. The defendant maintains that this nullity does not affect the undivided interests of those persons who were made defendants, were duly served so as to answer the complaint and were notified of the judgment. The district court followed the contention of the party plaintiff."

Appellant cites the cases of *Santana* v. *Orcasitas,* 47 P.R.R. 695, and *Ruiz et al.* v. *G. Llinás & Co.,* 31 P.R.R. 45.   Appellees rely on the argument that the judgment was not divisible and thus cannot be covered by section 190 of the Code of Civil Procedure which permits the entry of a judgment against a defendant or defendants, *"whenever (a) several judgment is proper."*   They insist that the "heirs of Rovira" *(sucesión Rovira)* were not all made parties defendant and hence no judgment could be handed down.   They maintain that the mortgage credit was an entirety and that it was impossible to fix the individual responsibility of each heir before the division of the property of the conjugal society and the partition of the inheritance should take place.

The lower court based its judgment on the case of *Gaudier* v. *Estate of García,* 10 P.R.R. 25, a prior decision.

In *Santana* v. *Orcasitas, supra,* we decided that an action to recover the damages resulting from an invalid foreclosure of a mortgage credit belonging to a conjugal society, could be successfully instituted against the surviving spouse, but limiting his responsibility in proportion to his one-half share in the community property, even though the heirs of the deceased wife were not made parties.

The facts and holding in the case of *Ruiz et al.* v. *G. Llinás & Co., supra,* were more or less as follows: G. Llinás & Co. originally filed suit against Juana Ruiz and her minor children to recover the amount of $1,299.94 and interest and in execution of the default judgment which ensued acquired some realty belonging to the aforementioned defendants.   Subsequently, the minor children brought an action in revendication, in which they sought to annul the above proceeding, alleging, among other things, that they had never been personally served with summons or a copy of the complaint.   A demurrer for insufficient facts to state a cause of action was sustained and plaintiffs refused to amend.   It was from an adverse judgment on the pleadings, therefore, that they took the corresponding appeal.   This court, while

stating in its opinion that the complaint was insufficient in certain respects, nevertheless, returned the case to the lower court for amendment by the plaintiffs. The important pronouncement, however, was that the original proceeding and subsequent execution sale were upheld in so far as they affected the mother of the children, Juana Ruiz, who had been duly before the trial court.

On the other hand, the case of *Gaudier* v. *Estate of García, supra,* on which the lower court founded it's judgment of nullity was one in which a doctor brought suit against the estate of Diego García Saint Laurent, to recover professional fees. A default judgment was entered against the defendants, and an appeal was taken therefrom on behalf of several minors on the ground, among others, that they had not been legally served with the necessary papers in the proceeding. This court found that, as the minor children had not been personally served, no jurisdiction had vested in the District Court of Mayagüez over all the parties to the action and that said court did not have control over all the subsequent proceedings. In conclusion, the opinion said: "For the reasons stated, we understand that the judgment appealed from should be reversed, as well as all the proceedings prior thereto, from the return of the affidavit of service of the summons, with costs against the respondent."

The nature of the action in the case before us differs from that involved in either of the three cases discussed. It was an ordinary action to foreclose a mortgage previously executed by the predecessor of the actual defendants in foreclosure. In that sense it was an action *quasi in rem.* Fundamentally the purpose of the suit was to collect the amount of the mortgage credit. In order to accomplish that purpose the secured creditor had to bring the debtor before the trial court. The original obligor, however, had died and therefore it became necessary to proceed against his legal substitute or substitutes. The Civil Code (1930 ed.) in sections 599, 600, 603, 608 and 610, provides:

"Section 599.—Succession is the transmission of the rights and obligations of a deceased person to his heirs.

"Section 600.—Succession also means the properties, rights and charges which a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether the said person leaves only charges and no property. .

"Section 603.—The rights to the succession of a person are transmitted from the moment of his death.

"Section 608.—The inheritance includes all the property, rights, and obligations of a person which are not extinguished by his death.

"Section 610.—Heirs succeed the deceased in all his rights and obligations by the mere fact of his death.''

Appellees insist that until the partition of the estate, none of the heirs have any individual liability, but that, together with their mother, they represent the deceased with regard to his rights and obligations.

The real problem before us is whether the judgment and adjudication to a mortgage creditor in an ordinary suit to foreclose, can stand with regard to those heirs of the deceased debtor who were sued, although the proceedings be annulled as to other heirs who were not properly before the court.

The case of *Schlarb* v. *Castaing*, 97 P. 289, 50 Wash. 331, was one where community property was mortgaged. •It was held that the children of the mortgagors were necessary parties to a suit to foreclose the mortgage after the husband's death, in order to affect their interest therein, its sale without joining them passing only the interest of the wife who was made a party. The holding is significant in that it upheld the judgment against the widow and the subsequent sale of her interest in the property. Similar reasoning could be made applicable to this case. Under the law of Washington, the property in question descended one-half to the widow and one-half, share and share alike, to the children, and they all held it as tenants in common. That renders the case even more analogous to the one before us.

The present action, as we have said, was one *quasi in rem* and thus primarily directed toward the sale of the mortgaged

premises to satisfy the debt. See *Baettenhaussen* v. *Borda*, 52 P.R.R. 523. The mortgage lien was stamped on the whole of the premises. Until division or partition of the estate, the heirs may be said to succeed to the property and rights of the deceased in a capacity akin to that which exists in an undivided tenancy in common. See Sánchez Román, *Derecho Civil* (1910 ed.), vol. 6 (1), p. 14. There can be no divided foreclosure of a mortgage unless the responsibility, as to the realty itself, is so divided. This is not clearly the case covered by Section 123 of the Mortgage Law, with regard to mortgaged property which is subsequently sold or divided into separate parcels.

If one analyzes the litigation pursued in the lower court for the foreclosure of the mortgage, and the judgment eventually rendered, it becomes apparent that both the suit and the judgment partook, unquestionably, of a personal quality. The sixth allegation of the complaint in the action of foreclosure, and the prayer for relief, read:

"*Sixth.*—The debtor, Darío Rovira, died in San Juan, intestate, leaving a widow, Carmen Morales, and leaving as sole descendants his children Carmen Pura and Darío Rovira Morales, unemancipated minors, who were engendered in his marriage with Carmen Morales, and those adult children had in a previous marriage, named Alejandrina, Pedro and Marina Rovira, and the above-mentioned widow and children have accepted the inheritance of Rovira and are in possession and enjoyment of the property which was mortgaged to Pedro Salazar Schuck.

"*Seventh* . . . . . . . .

"*Eighth* . . . . . . . .

"Therefore, it is prayed that this Honorable Court render judgment against the defendants Carmen Morales Widow of Rovira, Alejandrina, Pedro, Marina Rovira, Darío and Carmen Pura Rovira Morales, for the payment to the plaintiff, Dolores Cabrera widow of Salazar, of the sum of $6,000, interest at 9% annually from the 1st of May of this year and until full satisfaction and the costs and expenditures which may arise out of this action, providing that if such payment should not be made the property described in this complaint shall be sold at public auction, so that the judgment may

be satisfied from its sale price as far as it goes and if it should not be sufficient that other property of the same defendants, except the separate estate of Carmen Morales widow of Rovira, be sold, and that the court decree that the legal and physical possession of the properties sold in this manner be given to the purchaser at the sale, and that those who should be in possession as a result of a right derived from the defendants on a date subsequent to the inception of this proceeding should be ousted therefrom.''

From the opinion of the lower court in this case we have taken this statement:

''Suit No. 13,485 is directed against the defendants in their personal capacity and not as members of the estate of Darío Rovira.''

Under these circumstances, although the proceeding now attacked was called one in foreclosure of a mortgage, it was directed against the defendants personally and the judgment may be considered to have been rendered in the same sense. The question then becomes: Can the judgment stand against those defendants who were given their full day in court, even though it should fail as against those who were not? If this question is answered in the affirmative, the remaining problem is whether the execution of that judgment on the undivided interests of those who were properly served, may also be upheld.

The answer to the first question perhaps may be found in the nature of the obligation of each individual heir of the deceased, as to the hereditary debt under consideration, and in a study of the theory as to the entirety of judgments.

An examination of various commentaries on the Civil Code and of the jurisprudence of the Supreme Court of Spain has left us with the impression that the heirs of a deceased debtor are joint and severally (solidariamente) liable on the hereditary obligations of their predecessor, and this, even before partition of the estate has taken place. See Manresa, third edition, vol. 7, pp. 767–771 and the jurisprudence of the Supreme Court of Spain, cited therein. Of course, if the heirs accept the inheritance with benefit of inventory,

their ultimate responsibility is limited to whatever property they stand to receive under the inheritance, but their obligation so far as that property is concerned, is joint and several. The creditor of the deceased, therefore, can immediately proceed to attempt to collect his credit from any or all of the heirs. See Manresa, 1924 edition, vol. VII, p. 867. It follows, therefore, that a separate judgment could have been rendered against any of the heirs according to section 190 of the Code of Civil Procedure.

Having arrived at the above conclusion, we must decide that the judgment of the lower court should stand as against all the heirs who were properly before the court. The question still remains as to whether the adjudication, so to speak, to Mrs. Salazar, of their respective undivided interests should likewise stand. It must be admitted that the plaintiff in the original suit could have subjected those undivided interests to the satisfaction of her judgment. Should the fact that the property was sold as a whole, and not partially, militate against such an adjudication? If anything, experience tells us that the sale of urban property, a house and a lot, as was the case here, is enhanced by the auction of the property as a whole. The defendant in the present suit is not complaining of such a sale and is willing, apparently to distribute the price of adjudication in direct proportion to the shares subject to the judgment. Under this viewpoint, the heirs who are now attacking the proceeding cannot, in any way, be harmed by the original adjudication. Therefore, we are of the opinion that such adjudication should not be disturbed as to the undivided shares of any of the heirs whose rights were properly adjudged in the original suit.

As we have said, the lower court cited the case of *Gaudier* v. *Estate of García, supra.* It also relied to some extent on what is expressed in Black on Judgments, 2nd ed., vol. I, p. 313, par. 211. Unlike the present one, the case of *Gaudier* was not a suit for nullity, but an appeal in the main suit itself wherein the defense of lack of jurisdiction over some

minor heirs was raised. This court apparently considered the judgment as an entirety and, on review, certainly can not be affirmed as to one defendant and reversed as to another, but must be reversed as an entirety. See Black on Judgments, 2d ed., vol. I, p. 315. From this same author we have taken the following citation:

"There are numerous expressions in the books to the effect that a judgment is an entirety, and that if it is rendered against several defendants jointly, it is not susceptible of division or apportionment, so as to be purged of the error or irregularity it may contain as to one of them, while standing good against the rest. Accordingly it is held in a number of the states, that if the judgment is void as against one defendant, for want of jurisdiction over him, it must be considered as void as to all the defendants, and therefore a mere nullity. This question might arise, for example, in a case where two persons were named as defendants, but only one was served with process, the other being a non-resident or not found, and where after a contest by the defendant served, judgment should be rendered against both. According, then, to the foregoing rule, the judgment could have no more effect against the defendant who was served than against the other. Hence, to carry the supposition a step further, if the judgment were made the basis of an action, whether in a domestic or foreign tribunal, against the defendant served, he might show the irregularity of the proceedings in respect of his co-defendant, and that would be sufficient to defeat a recovery against himself. The result seems scarcely consonant to reason and justice. Yet some of the decisions, arguing from the entirety of the judgment, have felt obliged to hold precisely that position. But there are many other authorities which hold that although a judgment may be void as against one of the defendants, for lack of jurisdiction, still it may be valid and binding upon the others, or at most voidable, but not void in toto. And if this view is adopted, it is evident that the judgment will be attended by its usual incidents, as against the defendant over whom jurisdiction attached, until it is regularly reversed or vacated. Until that time an action will lie upon the judgment against him, and he will not be permitted to attack it collaterally. . . When we inquire as to the proper disposition to be made of a joint judgment against several defendants, which is void as to one of them, when it is brought before a court of review by writ of error or appeal, we find the authorities more

nearly harmonious. In general, they agree that it cannot be affirmed as to one defendant and reversed as to another, but must be reversed as an entirety. And conversely, if in favor of the defendants, invalidity as to one will vitiate it as to all. 'The judgment, being joint in favor of all the defendants and erroneous as to one, will have to be reversed as to all. A judgment jointly entered in favor of several defendants, whether in an action upon contract or for tort, cannot be affirmed as to one and reversed as to another. Such a judgment is an entirety, and must stand or fall together.' The acceptance of this rule, however, is not quite universal. . . Before leaving the subject, it is necessary to remark that if the judgment is several as to the parties, there may well be cases in which it will be good as to one though invalid as against another, and in which an appellate court would reverse it in part and affirm it in part. Further, the rule that a judgment void as to one defendant is void as to all is considered to aply only to judgments at law and not to decrees in equity.

"It will be obvious from the foregoing review of the authorities that the cases on this topic cannot be reconciled. But it will also appear that some of the courts holding the entire invalidity of a joint judgment, which is void as to one defendant, have been forced to an extreme length in the matter by the highly technical conception of such a judgment as an ideal entirety. Sound legal reason appears to suggest that while such a judgment is undoubtedly erroneous and liable to be reversed on appeal, yet, while unreversed, it ought not to be open to impeachment, by the debtor as to whom no irregularity exists, in any collateral proceeding. It also seems consonant to justice that judgments of this character should not be vacated or set aside on the application of the party legally bound, because, presumably, it is the other only who has been deprived of his rights or injured by an irregular or erroneous practice. As to the former, the judgment should not be shorn of its usual consequences, and there seems to be no adequate reason why it should not constitute a good cause of action against him. Finally, it is too much to say that the judgment supposed would be absolutely void as to both or all the defendants. For a void judgment is a mere nullity and binds no one, and no one can acquire any rights under it; whereas many of the cases (even those which use the expression 'void' in application to such judgments) hold that a purchaser under such a judgment will be protected, that the record may be amended, that such a judgment merges the cause of action, that execution may be directed against one defendant and restrained as to the other, and

so on, none of which consequences could follow if the judgment were merely null and void.''

The position favored by the author in the above citation strengthens our conclusion in this case.

We have no doubt that the proceedings had in the District Court of San Juan in the action to foreclose the mortgage were absolutely null and void as to the minors, Carmen Pura and Darío Rovira Morales and consequently that any record or entry in the registry of property, which takes away or impairs the title to their undivided interest in the property described in the complaint and which was adjudicated to the appellant, should be cancelled. We are also of the opinion that any heir who was not made a party to that proceeding is entitled to the benefit of this decision if he or she should choose to demand it.

With regard to the imposition of costs, as the minors were entirely without blame in this proceeding, we are disposed to support the discretion of the lower court, and so hold.

Judgment will be rendered in accordance with this opinion.